# EXHIBIT A

| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br><br>1437 Bannock Street<br>Denver, CO 80203 | DATE FILED<br>April 11, 2024 4:11 PM<br>FILING ID: FC1EACDF7BF59<br>CASE NUMBER: 2024CV31109 |
| **PLAINTIFF:** ALEX NICKUM, on behalf of himself and all others similarly situated,<br><br>v.<br><br>**DEFENDANTS**: CARDINAL GROUP MANAGEMENT & ADVISORY, LLC d/b/a CARDINAL GROUP MANAGEMENT; GLENDALE PROPERTIES I, LLC d/b/a MINT URBAN INFINITY; GLENDALE PROPERTIES II, LLC, d/b/a MINT URBAN INFINITY | ▲ **COURT USE ONLY** ▲<br><br>**Case Number:**<br><br>**Ctrm.:** |
| *Attorneys for Plaintiff*:<br><br>Jason Legg (#42946)<br>CADIZ LAW, LLC<br>501 S. Cherry St., Ste. 1100<br>Denver, CO 80246<br>720.330.2800<br>jason@cadizlawfirm.com<br><br>Steven L. Woodrow (#43140)<br>Patrick H. Peluso (#47642)<br>WOODROW & PELUSO, LLC<br>3900 East Mexico Avenue, Suite 300<br>Denver, CO 80210<br>720.213.0675<br>swoodrow@woodrowpeluso.com<br>ppeluso@woodrowpeluso.com<br><br>*Additional counsel appear on signature page* | |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Alex Nickum ("Plaintiff" or "Nickum"), individually and on behalf of all others similarly situated, by and through his attorneys, files this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants Cardinal Group Management & Advisory, LLC d/b/a Cardinal Group Management ("Cardinal"), Glendale Properties I, LLC d/b/a Mint Urban Infinity

("MIU"), and Glendale Properties II, LLC d/b/a Mint Urban Infinity ("MIU"). Plaintiff seeks to stop Defendant's practice of charging unlawful and inflated "junk fees", namely its valet trash fees and property tax fees, and obtain damages and other redress for those injured by Defendants' collective conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## INTRODUCTION

1. Defendants force thousands of Colorado tenants to pay inflated and unfair fees.

2. Defendants' business strategy has become increasingly common. Over the past several years, powerful and deep-pocketed corporations have sought to grow their profits by packing their contracts with hidden and misleading charges—known as "junk fees"—that increase the costs of daily life for working people.

3. Junk fees inflate prices and undermine fair competition in the rental housing market, which should be characterized by corporations competing openly over the true price of goods. Instead, most people in this country are now used to seeing their housing costs go up with inflated and hidden fees that are often not disclosed until after the consumer has spent significant time and money pursuing a good or service. Frequently, hidden fees are disclosed so late (if at all) that consumers cannot realistically go elsewhere, giving the consumer no choice but to bear these deceptive and unfair fees if they want to purchase concert tickets, banking services, utilities, or any number of other goods or services.

4. In the case of Defendants, rental junk fees operate like a hidden tax on tenants who have no choice but to pay contrived fees if they want to obtain or stay in their homes. Defendants' junk fees do not provide tenants with any special benefits or services beyond ordinary costs of doing business that a landlord is required to bear. These junk fees serve no legitimate purpose but to increase Defendants' profits and inflate their bottom line.

5. To date, Defendants have attempted to get away with these practices by hiding its fees, understating the true costs of housing, and then banking on the extreme power imbalance between itself and its renters, many of whom lack the wherewithal to push back.

6. Defendants' junk fees have devastating consequences. They can unexpectedly increase renters' monthly expenditures beyond advertised rent costs, making rental housing even more unaffordable, and undermine the financial stability of families across Colorado. While a renter may be able to manage and plan for high rents if they know about them in advance, the addition of an array of mandatory fees for "ancillary services" can unexpectedly push renters well beyond their means.

7. The belated disclosure of these fees—when they are disclosed at all—also harms fair competition. Prospective tenants cannot meaningfully compare prices for apartment rentals when significant portions of the monthly rent are disguised as add-on fees. This may lead tenants

to pay more than they otherwise would have for monthly rent, even when they can ill-afford the difference in price.

8. This case specifically challenges Defendants' valet trash fees and property tax fees.

9. A valet trash service will pick up trash deposited in a hallway outside a tenant's apartment and bring that trash to the dumpster at the apartment.

10. The valet trash fee is inadequately disclosed to renters during the rental application and lease renewal processes.

11. Likewise, Defendants' charge tenants such as Plaintiff a $5 per month property tax fee that is inadequately disclosed to renters during the rental application and lease renewal processes.

12. Though not included in the advertised rent, the valet trash junk fee and the property tax junk fee are actually part of the real rent tenants must pay—that is, part of the mandatory, monthly cost to stay in at Defendants' apartment. Tenants have no opportunity to shop for third-party service providers that may charge them less for the services the fees allegedly provide.

13. The valet trash fee is also a lie, inflated far beyond the true cost of the service provided. In reality, the valet trash fee simply provides Defendants with an additional, pretextual profit center for their bottom line. Even where a particular fee seems small—though it may not be small to a particular tenant—the collection of these fees (every month, year after year) from tens of thousands of tenants results in substantial unearned profits for Defendants.

14. The property tax fee is similarly inflated and, on information and belief, is beyond the actual tax levied (and more importantly, this should be the property owner's burden to bear in any case).

15. The valet trash fee also violates public policy by improperly shifting Defendants' cost of compliance with the warranty of habitability onto its tenants. Perhaps worse, it also charges for a service proscribed by the International Fire Code broadly adopted in the jurisdictions in Colorado where Defendants operates. *See, e.g.* **Ex. A - Arvada Fire Protection District Valet Trash Service Letter**. Through its junk fees, then, Defendants seek to force tenants to pay extra, beyond their advertised rental payments, for services that Defendants either must provide as a matter of law or are broadly disallowed by law.

16. For all these reasons, the valet trash junk fee and the property tax fee are deceptive, unfair, and unconscionable in violation of the Colorado Consumer Protection Act. Additionally, by imposing them, Defendants violate the covenant of good faith and fair dealing and the duty of accurate billing. Alternatively, Defendants have been unjustly enriched through such misconduct.

## PARTIES

17. Plaintiff Alex Nickum was a resident and citizen of the State of Colorado at all times pertinent to this action. He leased Apartment Number 503, at 1235 South Birch Street in Denver, Colorado from June 18, 2020 through July 17, 2021. The apartment building at 1235 S. Birch St. is known as Mint Urban Infinity.

18. Defendant Cardinal Group Management & Advisory, LLC ("Cardinal") is a Colorado limited liability company with its principal office at 4100 E. Mississippi Ave., 15th Floor, Denver, CO 80246, and does business under the trade name Cardinal Group Management. Cardinal is a multifamily real estate investment company headquartered in Denver, Colorado that owns and manages more than 35,000 residential dwelling units in thirty-seven states, including a large concentration in Colorado numbering well into the thousands.

19. Defendant Glendale Properties I, LLC is a foreign limited liability company with a principal office address listed with the Colorado Secretary of State as 1065 6th Ave FL 28, 5 Bryant Park, New York, NY 10018, and does business under the trade name Mint Urban Infinity. On information and belief, Glendale Properties I is a passive, single purpose real estate holding company owned by MapleTree Investments that has engaged Cardinal to act as its general agent in managing the Property.

20. Defendant Glendale Properties II, LLC is a foreign limited liability company with a principal office address listed with the Colorado Secretary of State as 1065 6th Ave FL 28, 5 Bryant Park, New York, NY 10018, and does business under the trade name Mint Urban Infinity. On information and belief, Glendale Properties II is a passive, single purpose real estate holding company owned by MapleTree Investments that has engaged Cardinal to act as its general agent in managing the Property.

21. At all times relevant, Defendant Cardinal has acted as the general agent, property manager, and landlord of the Property (where Plaintiffs resided as tenants) on Defendant Mint Urban Infinity's behalf. On information and belief, the contract or other agreement between Mint Urban and Cardinal terminated or otherwise ended sometime in 2022.

22. All actions taken by Cardinal set forth herein were on behalf of and for the benefit of itself and as agent for its principal, Mint Urban, the property owner.

## JURISDICTION AND VENUE

23. This Court has jurisdiction over Defendants pursuant to C.R.S. § 13-1-124(1)(a) because Defendants transact business in the State of Colorado.

24. The Court also has jurisdiction over Defendants pursuant to C.R.S. § 13-1-124(1)(c) because Defendants owns, uses, or possesses real property situated in the State of Colorado.

25. Venue is proper in Denver County. The Mint Urban Infinity apartment complex is located in Denver County.

## COMMON FACTUAL ALLEGATIONS

### I. The Scope of Defendants' Junk Fee Scheme

26. Defendants own, operate, and manage tens of thousands of apartment units in Colorado.

27. On information and belief, all of Defendants' Colorado properties are subject to the same Form Lease terms and Policies. (*See* Form Lease, true and accurate copies of which are attached hereto as **Group Ex. B**.)

28. The Form Lease is dense, consists largely of boilerplate terms, and is non-negotiable.

29. Irrespective of the particular property in Colorado, the Form Lease has substantively identical language and provisions, in the body of the contract as well as in incorporated form addenda, with respect to key terms such as Valet Trash.

30. The Form Lease also has substantively identical provisions regarding rent, security deposits, landlord obligations and duties, tenant obligations, force majeure, and a host of other terms.

31. The Form Lease was ultimately approved of and presented by Defendants on a take-it-or-leave-it basis, and any ambiguities should be construed against them as the drafters.

32. Similarly, Defendants also use uniform policies across its Colorado properties.

33. Defendants assess and seek to collect valet trash fees and property tax fees in the same unlawful manner with respect to all its Colorado tenants.

34. Defendants charge every tenant Valet Trash Fees, typically $25 per month.

35. Defendants charge every tenant a property tax fee, typically $5 per month.

36. On information and belief, Defendants, themselves or through agents, pursue the valet trash fees and property tax fees through collections actions before and after tenants have vacated.

37. Plaintiff was charged valet trash fees and property tax fees during the duration of his tenancy at Mint Urban Infinity.

38. Plaintiff and class members have paid the challenged valet trash fee and property tax fee to protect their interests in their leaseholds.

**II. Defendants' pricing structure and disclosure practices misrepresent the total cost of rental housing at Defendants' properties.**

39. Defendants misrepresent the total costs of its rental units by omitting the valet trash fee and property tax fee from advertised prices and by ultimately disclosing the fees separately from the base rent price.

40. The valet trash fee and property tax fee are deceptive and unfair insofar as they are not disclosed until *after* the tenants have already spent hundreds of dollars (or more) on non-refundable fees to apply for and secure the unit and other sunk costs like moving expenses.

41. Neither challenged fee is included in the advertised rental amount despite the fact the Form Lease states, "All payment obligations under this Lease Contract shall constitute rent under this Lease Contract." (*See* Ex. B at p. 2.)

42. However, the valet trash fee and property tax fee amounts are not included in the advertised rental amount.

43. Further, despite containing a list of fees and charges, Defendant's "Welcome Home" letters, which it provides to tenants and applicants do not disclose the valet trash fee and the property tax fee line item is left blank (thus giving the impression that there is no such fee to be charged). (*See* Plaintiff's Welcome Home Letter, attached hereto as Exhibit C.) Rather, tenants are not informed of the valet trash fee and property tax fee until they are presented with the Form Lease, which is well after they have already expended considerable amounts to initiate the rental process, including non-refundable application fees, administrative fees, security deposits, pet deposits, and at least the first month's rent, and when they are short on time to find and secure an alternative place to live. At that point, it is highly impractical if not impossible to find alternative housing to avoid the fees

44. This practice of gradually disclosing additional costs throughout the consumer's rental process (known as "drip pricing") is deceptive, unfair, and unavoidable for Defendants' tenants.

45. Even upon disclosure, Defendants continue to disclose the valet trash fee and property tax fee *separately* from the monthly rent charge, as part of the lengthy Form Lease, which typically spans over 40 pages in length.

**III. Defendants misrepresent the product and services received in exchange for the payment of monthly rents.**

46. Through the imposition of its valet trash fee and property tax fee, Defendants misrepresent the characteristics and identity of the product and services received for the payment of monthly rents.

47. By advertising rental housing in exchange for a monthly rent amount, Defendants

represent that tenants will receive a suitable dwelling place in exchange for the payment of monthly rent.

48. However, tenants later learn that they will not receive a suitable dwelling place without additional purchases in the form of additional mandatory fees.

49. It is deceptive and unfair to sell a product that is not fit for the purpose sold, including when the good or service sold cannot be used for its intended purpose without an additional purchase.

50. Defendants continue to misrepresent the characteristics and identity of the product and services received in exchange for the payment of monthly rents.

## IV. Defendants use their junk fees as a profit center, misrepresenting their nature and purpose.

51. Defendants obfuscate the nature and purpose of the challenged fees, including the nature of the service tenants purportedly receive in exchange for the fees and the actual cost of any service provided.

52. The valet trash fee operates as a profit center instead of serving any legitimate purpose. That is, the amounts charged to tenants vastly exceed Defendants' monthly costs and simply act to pad Defendants' bottom lines.

53. This is particularly true in Nickum's situation at Mint Urban Infinity. The apartment building was already fitted with perfectly useable trash chutes for tenants to dispose of their garbage. Rather than allow tenants to use these chutes, Defendants bolted them shut and began charging mandatory valet trash fees that exceed Defendants' actual cost for providing that service. So not only do Defendants charge marked up fees in order to profit, they remove a viable alternative to the fee by bolting the alternative shut.

54. Indeed, on information and belief, Defendants' costs for valet trash services are significantly lower than $25 per unit per month.

55. This fee is portrayed as a "service" in Defendants' leases despite the fact that it is mandatory, runs afoul of the broadly adopted International Fire Code, and a tenant might not choose the service if provided the option.

56. Valet trash service providers typically charge their landlord clients $8 to $12.50 per unit per month for the service.

57. By forcing tenants to pay for valet trash services and by charging $25 per month for the mandatory "service," Defendants create a tidy, pretextual profit center than is nowhere in the advertised rent. Via this hidden fee, Defendants are able to increase their profits by up to $15 per unit per month (if not more)—a substantial and unfair windfall.

58. The same windfall is true of Defendants' property tax fee. By charging a flat $5 per unit, Defendants created yet another profit center that is not advertised.

59. Defendants' deceptive advertising, pricing structure, and inflation of its valet trash and property tax fees all harm Colorado consumers. Consumers are unable to truly compare the cost of different apartments, and are financially harmed when they must pay fees they did not expect (and may be unable to afford). And consumers are also harmed by Defendants' mandatory, inflated valet trash and property tax fees which tenants have no opportunity to negotiate and which may balloon in Defendants' sole discretion.

## V. Defendants improperly shift the cost of compliance with the warranty of habitability onto its tenants.

60. Colorado's Warranty of Habitability law requires that landlords provide:

> (VII) Common areas and areas under the control of the landlord that are kept reasonably clean, sanitary, and free from all accumulations of debris, filth, rubbish, and garbage and that have appropriate extermination in response to the infestation of rodents or vermin; [and]
>
> (VIII) Appropriate extermination in response to the infestation of rodents or vermin throughout a residential premises….

C.R.S., § 38-12-505(1)(b)(VII)-(IX).

61. With very narrow exceptions limited to single family homes, *see e.g*. C.R.S. § 38-12-506, Colorado's warranty of habitability law prohibits any waiver or modification of its terms, including shifting landlord duties onto tenants. *See* C.R.S., §§ 38-12-503(5).

62. Despite obligating landlords to provide common areas free of debris and rubbish, Defendants—through the mandatory use of its non-negotiable Form Lease agreements and attendant policies—pushes the cost of compliance onto its tenants through the imposition of valet trash fees. They charge these amounts beyond rental payments, which should afford tenants the bare minimum that Defendants must provide under the law.

63. The valet trash fees are void and unlawful because they improperly seek to modify the warranty of habitability by, *inter alia*, shifting the burden of compliance with the Warranty of Habitability onto tenants.

64. These charges deceptively and unfairly mislead consumers into believing that these costs are assessed for services they are provided in addition to the habitable dwelling places received in exchange for payment of their monthly rent.

## FACTS SPECIFIC TO NAMED PLAINTIFF ALEX NICKUM

65. Plaintiff Nickum had a lease at Mint Urban Infinity from June 2020 through July 2021.

66. Nickum was assessed and paid the valet trash fee and the property tax fee every month during his tenancy. He did so to protect his interest in his leasehold.

## CLASS ACTION ALLEGATIONS

67. Plaintiff brings this action in accordance with Colorado Rule of Civil Procedure 23 on behalf of himself and a Class defined as follows:

> All persons who: (1) leased a residential rental unit in Colorado from Defendants within the relevant statute of limitations, (2) using Defendants' Form Lease, and (3) were assessed a valet trash fee and/or a property tax fee.

68. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's principals, subsidiaries, parents, successors, predecessors, contractors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons.

69. Plaintiff anticipates the need to amend the class definition following a period of appropriate class-based discovery.

70. **Numerosity:** The exact number of Class Members is unknown and not available to Plaintiff at this time, but individual joinder is impracticable. On information and belief, Defendants have charged the valet trash fee to thousands of tenants who fall into the Class as defined. The number of Class Members and class membership can be identified through entirely objective criteria, including Defendant's business records and tenant payment ledgers.

71. **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff and the members of the Class were assessed the same allegedly unlawful charges and sustained the same legal injuries and damages arising out of Defendants' uniform wrongful conduct. If Plaintiff has an entitlement to relief, so do the rest of the Class Members.

72. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions, including class actions against landlords and class actions seeking damages and declaratory relief arising out of form lease agreements. Neither Plaintiff nor his counsel has any interest in conflict with or antagonistic to those of the Class, and Defendants have no defenses

unique to Plaintiff.

73. **Commonality and Predominance:** There are questions of law and fact common to the claims of Plaintiff and the Class, and those questions will drive the litigation and predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

(a) Whether Defendants' valet trash and property tax fees unlawfully shift its statutory obligations onto tenants;

(b) Whether the valet trash fees and property tax fees are unlawful profit centers;

(c) Whether the valet trash and property tax fees should have been disclosed prior to the presentation of the Form Lease;

(d) Whether Defendants acted knowingly when performing any unlawful, unfair, and deceptive conduct and whether such conduct carries a significant public impact so as to violate the CCPA;

(e) Whether the Class is entitled to injunctive relief and/or declaratory relief;

(f) Whether the Class is entitled to damages; and

(g) Whether the Class is entitled to other relief including reimbursement of costs, reasonable attorneys fees, and pre- and post-judgment interest.

74. **Conduct Similar Towards All Class Members:** By committing the acts set forth in this pleading, Defendants have acted or refused to act on grounds substantially similar towards all members of the Class so as to render certification of the Class for declaratory relief appropriate under Rule 23(b)(2).

75. **Superiority & Manageability:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Class will likely be relatively small when compared to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a certified class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Separate lawsuits pose a risk of contradictory decisions on key legal and factual issues impacting every Class member. Also, there are no pending

governmental actions against Defendants for the same conduct, and any such action would be less preferable to Class Members who have a vested interest in seeing the case pursued in a way that maximizes the class's recovery.

**FIRST CAUSE OF ACTION**
**Violation of the Colorado Consumer Protection Act ("CCPA")**
**C.R.S. § 6-1-101 *et seq*.**
**(On Behalf of Plaintiff and the Class)**

76. Plaintiff restates and re-alleges each of the foregoing allegations as if set forth fully herein.

77. Under the Colorado Consumer Protection Act "a person engages in a deceptive trade practice when, among other acts, in the course of the person's business, vocation, or occupation, the person":

> (i) Advertises goods, services, or property with intent not to sell them as advertised;
>
> (*l*) Makes false or misleading statements of fact concerning the price of goods, services, or property or the reasons for, existence of, or amounts of price reductions;
>
> (u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction;
>
> (rrr) Either knowingly or recklessly engages in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice.

C.R.S. § 6-1-105.

78. In violation of these subsections, Defendants knowingly or recklessly engaged in unfair, deceptive, and unconscionable acts and practices.

***Unfair and Deceptive Conduct***

79. Defendants knowingly or recklessly acted in unfair acts and practices by shifting the burden of complying with its statutory obligations under Colorado's Warranty of Habitability Statute by charging tenants for valet trash services, and grossly inflating the amounts charged to tenants in relation to its actual costs for the valet trash service so as to turn the valet trash fees into additional profit centers.

80. Defendants knowingly or recklessly acted in an unfair and deceptive manner by advertising rents lower than the actual monthly rent, by charging significant sums and requiring significant time an expense for tenants to uncover the true cost of a rental, and by failing to disclose

the monthly valet trash fee and property tax fee before presenting tenants with their leases for execution—often shortly before move-in, after significant sums have been expended to secure the rental, and at a time when it would be impractical for tenants to find alternative housing.

***Unconscionable Acts – The Imposition of the Valet Trash Fee Was Procedurally and Substantively Unconscionable.***

81. Defendants have also acted unconscionably. Procedurally, the Form Lease is non-negotiable and largely presented on a take-it-or-leave-it basis (with *some* negotiation potentially allowed for the rental amount). It is provided to prospective tenants for review *after* they have already paid hundreds of dollars in application fees, administrative fees, and potentially additional amounts, like the first month's rent, any pro-rated rent, and any security deposit(s). The Form Lease itself routinely exceeds 45-pages in length, and the valet trash fee is buried within dense text written in "legalese."

82. Substantively, the Form Lease purports to allow the assessment of fees that are unlawful and grossly exceed any actual costs for which they are nominally being imposed. Defendants pass the burden onto tenants as well as the costs by charging monthly fees for services they are required by law to provide. For valet trash, contrary to both the warranty of habitability statute and broadly adopted versions of the international fire code, tenants are actually required to place trash in common area hallways. Under the warranty of habitability statute, "any agreement waiving or modifying the warranty of habitability shall be void as contrary to public policy." C.R.S. § 38-12-503(5). The Form Lease seeks to modify the warranty here and, as such, is void.

83. Moreover, these charges grossly exceed Defendants' actual costs and simply amount to additional rent. Valet trash vendors typically charge $10 or $12.50 per unit each month. By charging tenants $25 per month, Defendants are able to add an additional $12.50 - $15 in rent per unit every month. Assessing such mark-ups is particularly one-sided because they are not disclosed before the Form Lease is presented and prospective tenants have already invested hundreds (if not thousands) of dollars pursuing the unit. Furthermore, Defendants' separate monthly fee to cover its property taxes is inflated and exceeds any actual costs and is an after-the-fact hidden profit center.

***Substantial and Significant Public Impact***

84. To the extent required by Colorado law, Plaintiff alleges that Defendants' unlawful conduct and other violations of the CCPA set forth above significantly impacts the public.

85. The number of consumers directly affected by the challenged practices is significant and growing. These fees are charged for each of Defendants' properties; each of these properties may have had many tenants who paid the fees over months or years.

86. These consumers are often substantially less sophisticated than Defendants. They certainly have less bargaining power. Defendants hold all the cards, and all the power in the consumer transaction—particularly when the fees are disclosed long after the consumer has

invested significant time and money to secure the apartment.

87. In addition, Defendants are large corporate landlords in Colorado. Their practices of charging junk fees significantly impacts how others behave in the market. Colorado renters face an affordability crisis, and junk fees such as those challenged in this Complaint make leasing less affordable for tens of thousands of Coloradans.

88. The volume of deceptive advertising is also significant—every time Defendants list an apartment or sends a renewal letter it falsely advertises the price of the apartment's monthly rent. Each of these advertisements tells the public important facts which are untrue.

***Class Relief Sought***

89. Defendants have engaged in or caused others to engage in the deceptive trade practices set forth above, and Plaintiff and the Class members are consumers or potential consumers of Defendants' rental units.

90. Pursuant to C.R.S. § 6-1-113(2.9), Plaintiff seeks, on behalf of himself and the Class, all actual damages suffered as a result of the deceptive trade practices in amounts to be proven at trial, injunctive relief allowed by law, and an award of reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## Breach of Contract
## (On Behalf of Plaintiff and the Class)

91. Plaintiff restates and realleges the foregoing allegations as if set forth fully herein.

***Breach of Covenant of Good Faith and Fair Dealing***

92. Every Form Lease is a contract that contains an implied covenant of good faith and fair dealing.

93. The covenant of good faith and fair dealing requires that each party to the contract, to the extent the contract affords them discretion, not abuse that discretion or act in a manner so as to not frustrate the other side's ability to enjoy the benefit the bargain.

94. Under the Form Lease, Defendants have the ability to determine which charges get billed in any particular month and the manner by which those charges will be pursued.

95. Defendants have abused their discretion by grossly overcharging for its actual costs for valet trash service and for property taxes. Defendants improperly shift the cost burden of statutory and tax compliance onto tenants. Further, only Defendants know their actual costs, and by turning these charges into profit centers Defendants make it more difficult for tenants to make rent and enjoy their tenancies.

96. As a corollary to the implied covenant of good faith and fair dealing is an implied duty of accurate billing. Defendants have breached that implied duty by assessing the Challenged Fees without a legal basis for doing so.

97. As a result of these breaches, Defendants have caused Plaintiff and other tenants actual damages.

98. Plaintiff seeks, on behalf of himself and the Class, actual damages in amounts to be proven at trial plus costs, pre- and post-judgment interest, and such additional relief as the Court deems necessary and just.

**THIRD CAUSE OF ACTION**
**Alternative Claims for Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

99. Plaintiff restates and realleges the foregoing allegations as if set forth fully herein.

100. In the event the Form Lease is found unenforceable or otherwise fails, or that the valet trash fees and property tax fees fall outside the contract, Defendants have been unjustly enriched through the charging and collection of the Challenged Fees.

101. Plaintiff and other tenants have conferred benefits on Defendants in the form of the valet trash fee and the property tax fee under circumstances where Defendants should not be permitted under principles of equity and good conscience to retain such fees.

102. Plaintiff, on behalf of himself and the Class, pray for an Order of Judgment disgorging Defendants of all amounts collected and retained as a result of the valet trash and property tax fees and returning such fees to the Plaintiff and the other Class Members and for such additional relief as the Court deems necessary and just.

**FOURTH CAUSE OF ACTION**
**Declaratory Judgment**
**C.R.S. §§ 13-51-105, 13-51-106 et seq.**
**(On Behalf of Plaintiff and the Class)**

103. Plaintiff restates and realleges the allegations set forth above as if set forth fully herein.

104. Under C.R.S. § 13-51-105 "Courts of record within their respective jurisdictions have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

105. Indeed, under Colorado law:

> Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

C.R.S. § 13-51-106.

106. Plaintiff and the Class members are interested under their Form Lease agreements, which are contracts, and they may have determined any question of construction or validity arising under their lease agreements.

107. Based on the foregoing violations of Colorado statute, breaches of contract, and other causes of action, Plaintiffs seek an Order of Judgment finding and declaring the following:

a. That Defendants, by charging valet trash fees, unlawfully shift their burden under the Warranty of Habitability to ensure a premises free of pests and trash accumulation in the common areas;

b. That Defendants' imposition of the valet trash service and collection of the valet trash fees is illegal where it violates applicable fire codes disallowing such services;

c. That Defendants' charging and mark ups on valet trash fees and property tax fees violate the CCPA;

d. That Defendants have breached the implied covenant of good faith and fair dealing;

e. That Defendants have been unjustly enriched through the charging and collection of the valet trash fees and property tax fees and should be disgorged of such monies; and

f. That Plaintiff and Class member are entitled to damages and injunctive relief barring the continued charging and collection of the valet trash and property tax fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all other Class Members, prays for an Order of Judgment:

A. Certifying the Class as set forth above, appointing Alex Nickum as the Class Representative and appointing his counsel as Class Counsel;

B. Awarding actual damages in an amount to be proven at trial, plus injunctive relief prohibiting the further collection or negative credit reporting of such amounts, reasonable attorneys' fees and costs for all violations of the CCPA and C.R.S. § 38-12-105(3);

C. Awarding actual damages in an amount to be proven at trial for all breaches of contract and breaches of the covenant of good faith and fair dealing;

D. In the alternative, requiring that Defendants be disgorged of all ill-gotten gains and other sums that have led to Defendants' unjust enrichment, in amounts to be proven at trial, for Defendant's charging of the unlawful valet trash fees and property tax fees;

E. Requiring that all damages be paid into a common fund for the benefit of the Class;

F. Awarding pre-judgment interest and post-judgment interest against Defendant, on all sums awarded to Plaintiff and Class Members;

G. Awarding Plaintiff and Class Members their reasonable attorneys' fees and expenses, to be paid from the common fund prayed for above; and

H. For such other and further relief as the Court deems reasonable, necessary, and just.

Dated: April 11, 2024

ALEX NICKUM, individually and behalf of all others similar situated,

By: *_/s/ Jason Legg_*
One of the Plaintiff's attorneys

Jason Legg (#42946)
CADIZ LAW, LLC
501 S. Cherry St., Ste. 1100
Denver, CO 80246
720.330.2800
jason@cadizlawfirm.com

Steven L. Woodrow (#43140)
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210

Cameron Netherland, #55864
cam@justiceforthepeoplecenter.org
Justice for the People Legal Center
501 S. Cherry St., Ste. 1100
Denver, CO 80246